

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2007

# Oei v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4448

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Oei v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1760.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1760

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4448

———

AY SIOE OEI; YUKI KODAMA,

Petitioners,

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent.

———

On Appeal from the Decision of the
Board of Immigration Appeals (BIA)
dated September 2, 2005

———

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2007

Before: SLOVITER, RENDELL, *Circuit Judges*, and IRENAS,[*] *Senior District Judge.*

(Filed: January 22, 2007)

———

OPINION

———

_____

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

**IRENAS**, Senior United States District Judge.

Petitioners Ay Sioe Oei and Yuki Kodama seek review of a final order issued by the Board of Immigration Appeals (the "Board") affirming the decision of the Immigration Judge denying their applications for asylum and withholding of removal.[1] This Court must determine whether the decisions of the Immigration Judge and the Board of Immigration Appeals denying petitioners' applications were supported by substantial evidence in the record.[2]

I.

The Petitioners, Oei and Kodama, are mother and daughter. (Pet. Br. at 4). Ms. Oei, a 37-year old female, is a native and citizen of Indonesia and was admitted to the United States on May 9, 2001, as a non-immigrant with authorization to remain for a six month period, which expired on November 8, 2001. (Res. Br. at 3). Kodama, her minor daughter, is a native of Indonesia and citizen of Japan, who was admitted to the United

---

[1] Because the Board issued a single-member decision pursuant to 8 C.F.R. § 1003.1, this Court will review the decision of the Board *and* the Immigration Judge. *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878, 54886 (August 26, 2002) ("the parties and any reviewing court would be able to look to the combination of the Immigration Judge's opinion and the single-member decision to understand the conclusions reached in the adjudication.") *Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006); *Abebe v. Gonzoles*, 432 F.3d 1037, 1040-41 (9th Cir. 2005).

[2] Under the "substantial evidence" standard of review, the ruling of the Board of Immigration Appeals must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also INS v. Elias-Zacarias*, 502 U.S. 478 n.1 (1992) (to reverse the Board, the evidence must not merely support reversal, but compel reversal).

2

States on July 11, 2000 as a non-immigrant with authorization to remain until January 10, 2001. (*Id.*)

On August 21, 2002, Oei filed a Form I-558, "Application for Asylum and for Withholding of Removal," with the former Immigration and Naturalization Service (the "INS"). (*Id.*) On October 16, 2002, the INS commenced removal proceedings against Petitioners by issuing to both petitioners a Form I-862, "Notice to Appear," charging them with being removable under Section 237(a)(1)(B) of the Immigration Naturalization Act (the "INA"), 8 U.S.C. § 1227(a)(1)(B), as aliens who remained in the Unites States for a time longer than permitted. (*Id.*).

On May 17, 2004, after an evidentiary hearing, an Immigration Judge denied Petitioners' application for asylum and for withholding of removal and protection under the Convention Against Torture,[3] and ordered them removed from the United States to Indonesia. (*Id.* at 4). On September 2, 2005, the Board affirmed the decision of the Immigration Judge. (*Id.*).

Petitioners' case for asylum focuses on alleged persecution Ms. Oei claims to have suffered because she is ethnically Chinese, and because she is a Catholic in predominantly Islamic Indonesia. (Pet. Br. at 5). Ms. Oei claims that if returned to Indonesia, she and her daughter would suffer further discrimination and persecution,

---

[3] Petitioner does not advance the argument that the Convention Against Torture requires the stay of the removal order against her. The record also does not contain any evidence of torture.

creating an unsafe environment for her daughter to grow into adulthood. (*Id.*).

With regard to the alleged persecution based on her ethnicity, Ms. Oei claims that native Indonesians threw stones at Chinese people's stores in her neighborhood, to which the police did not respond or assist. (Pet. Br. at 5). In another instance, Ms. Oei testified that as she was passing a soccer stadium on her motorcycle, some teenagers bumped into the rear of her cycle causing her to fall off and hurt her leg. (*Id.*). She claims that she was burned by the motorcycle's exhaust pipe, and that the teenagers then ran over her foot, laughing and yelling obscenities. (*Id.*). Ms. Oei's affidavit states that she was hospitalized for two weeks, but her testimony states that she was hospitalized for two to three weeks. When asked to resolve the discrepancy between her affidavit and testimony, she stated that she was hospitalized for two weeks and treated as an outpatient for one week. (Res. Br. at 11). Ms. Oei also claims that the police witnessed the incident but refused to assist her. (Pet Br. at 6). In another alleged instance of persecution because of her ethnicity, Ms. Oei claims that she was fondled and harassed by a group of young men near a graveyard while she was walking home from school. (*Id.*).

With respect to persecution based on her religion, Ms. Oei states that such persecution "was not as severe as other incidents." (*Id.* at 7). She recounts one alleged occasion in 1986; when she was attending mass, stones were thrown at the church, breaking some of the church's artwork. (*Id.*). Ms. Oei also testified about another incident that occurred while she was using public transportation, where other passengers asked Ms. Oei what her religion is. She testified that upon answering that she is Catholic,

the other passengers became negative and asked "why did you join Catholicism" and urged her to join Islam. (*Id.*).

The Immigration Judge found that Ms. Oei's testimony was not credible because of several discrepancies and inconsistencies between her testimony and asylum application. (*Id.* at 12). The Judge also found that even assuming Ms. Oei's testimony were credible, she would not have proven that she had been "persecuted" either for her ethnicity or religion to the extent that would warrant the granting of asylum or withholding of removal. (*Id.* at 14). The Board, affirmed the Immigration Judge's decision. (*Id.* at 17).

## II.

This Court has appellate jurisdiction to review any final order of removal under 8 U.S.C. §§ 1252(a)(1), 1252(b). *See also Dia v. Ashcroft*, 353 F.3d 228, 234-46 (3d Cir. 2003) (*en banc*); *Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001).

## III.

The issue before this Court is whether Ms. Oei established a "well-founded fear" of persecution in Indonesia, assuming the hostilities she experienced in Indonesia were true.[4]

---

[4] Ms. Oei also argues that the Board and the Immigration Judge erred by not crediting her claims. This argument is moot because we assume that her claims are true in this opinion.

Section 208(b)(1) of the INA grants the Attorney General the discretion to grant asylum to "refugees." 8 U.S.C. § 1158(b)(1); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987). An alien who seeks asylum must establish that she is a "refugee" as defined by the INA. *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). A refugee is defined by the INA as a person who is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*

Section 243 of the INA governs withholding of removal of an illegal alien. 8 U.S.C. § 1252. In order to be eligible for a withholding of removal, an alien must show that there is clear probability that she would be subject to persecution on account of one or more of five statutory grounds. *INS v. Stevic*, 467 U.S. 407, 423 (1984); 8 C.F.R. § 208.16(b). If the petitioner establishes that he or she has experienced a past threat to such life or liberty interests, a rebuttable presumption exists that there is a clear probability of future prosecution. 8 C.F.R. § 208.16(b)(1). The presumption may be rebutted if the Immigration Judge finds, by a preponderance of the evidence, that: (A) there has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of the statutory grounds after the applicant's removal to that country; or (B) the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and it would be reasonable to expect the applicant to do so under the totality of the circumstances. 8

6

C.F.R. §§ 208.16(b)(1)(i)(A) and (B).

In cases in which the applicant has established past persecution, the INS bears the burden to establish, by a preponderance of the evidence, the requirements of § (b)(1)(i)(A) or (B). If the applicant's fear of future threat to life or freedom is unrelated to the past persecution, the applicant bears the burden to establish that she would suffer such harm. *Id*.

The "clear probability of persecution" burden of proof required to establish withholding of removal is more stringent than the "well-founded fear" standard of proof required for asylum. *Cardoza-Fonseca*, 480 U.S. at 441. Withholding of removal requires that an applicant satisfy two burdens: (1) that she is a refugee, i.e., she has at least a "well-founded fear of persecution"; and (2) that the refugee show that his or her life or freedom would be threatened if deported. Thus, if an alien does not meet the eligibility standard for asylum, he or she will necessarily be unable to meet the standard for withholding of removal. *Id*; *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

To be eligible for asylum, an applicant must show that he or she has a "well-founded fear of future persecution." *INS v. Cardoza-Fonseca*, 480 US 421, 438-39. This test has been described as having both an objective and subjective component. To satisfy the subjective component, the petitioner must demonstrate a subjective fear of persecution through credible testimony that her fear is genuine. *Zubeda v. Ashcroft*, 333 F.3d at 469. To satisfy the objective component, the petitioner's fear must be of the degree which would be experienced by a "reasonable person in the same circumstances." *Id.* This may

be accomplished either by showing that the petitioner would be individually singled out for persecution, or by demonstrating that "there is a pattern or practice in his or her country of nationality ... of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion..." *Id.;* 8 C.F.R. § 208.13(b)(2)(iii)(A).

The "well founded fear of future prosecution" standard does not require proof that persecution is "more likely than not" if an alien is deported. *INS v. Cardoza-Fonseca*, 480 U.S. at 438. Nevertheless, the Third Circuit has held that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1242 (3d Cir. 1993). It extends only to grave harms such as threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom. *Id.* at 1240.

Past persecution requires proof of (1) one or more incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control. In the absence of evidence of an intent to persecute on account of a protected ground, it was not unreasonable for the Immigration Judge to conclude that an incident did not constitute past persecution. *Silvana v. AG of the United States*, 2006 U.S. App. LEXIS 29222 at *4 (3d Cir. 2006). Random, isolated acts perpetrated by anonymous thieves do not establish persecution. *Id.*

Under these standards, even assuming Ms. Oei's account of her experience were

8

found to be credible, the harassment and unlawful conduct that she was subjected to does not rise to the level of persecution under the INA. With regard to the two alleged incidents involving Ms. Oei's religion, the stoning of her church two decades ago and the verbal confrontation she experienced while riding on public transportation do not amount to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin*, 12 F.3d at 1240. As the Immigration Judge observed, no one was injured when stones were thrown at Ms. Oei's church, and the stoning was an isolated incident. (Res. Br. at 15). In addition, the encounter on public transportation, in which other riders asked her about her religion and expressed some disapproval, clearly does not rise to the level of "persecution" described above. *See Fatin*, 12 F.3d at 1240.

Ms. Oei testified to incidents, including unwanted touching and sexual advances, as well as an assault and resulting hospitalization. However, none of these unfortunate events have been linked to any evidence in the record indicating that they were perpetrated because of Ms. Oei's Chinese ethnicity. Such random isolated acts by anonymous perpetrators do not amount to persecution under the INA. *Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004); *see also Lie v. Ashcroft*, 396 F.3d 530, 537-38 (3d Cir. 2005).

Ms. Oei also argues that anti-Chinese sentiment in Indonesia has led to severe, widespread violence against Chinese owned businesses, and against Chinese women and girls. (Pet. Br. at 13). However, the this Court observed in *Lie*, 396 F.3d at 537, a case

9

with similar facts to this one, that such violence was not sufficiently widespread to constitute a pattern or practice of violence. Moreover, this Court noted in *Lie* that there appears to have been a sharp decline in violence against Chinese Christians following the height of the violence in 1998. *Id.*; *see* 1999 Country Report on Indonesia; *see also Pui v. AG of the United States*, 2006 U.S. App. LEXIS 28871 (3d Cir. 2006) (rejecting the argument that the violence against ethnic Chinese in Indonesia amounted to a "pattern or practice").

Ms. Oei's account of her experiences in Indonesia did not satisfy the standard for asylum. Because the burden of proof required for withholding of removal is more stringent that the burden of proof for asylum, she necessarily fails to meet the standard for withholding of removal. *Lukwago v. Ashcroft*, 329 F.3d at 182.

IV.

For the reasons set forth above, the petition for review will be Denied.

10